[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 19-14515
Non-Argument Calendar
_____

Agency No. A216-453-114

G. D.,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(January 12, 2021)

Before GRANT, LUCK, and LAGOA, Circuit Judges.

PER CURIAM:

G.D. seeks review of the Board of Immigration Appeals' ("BIA") order, affirming the immigration judge's denial of withholding of removal.[1]  G.D. argues that the BIA erred in affirming the immigration judge's finding that his fear of future persecution, if he were to return to Macedonia, based on his bisexuality was not objectively reasonable.  Because we find that substantial evidence supported the BIA's finding, we deny his petition for review.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

G.D., a native and citizen of Macedonia, lawfully entered the United States on or about November 16, 2016, on a temporary visa that expired on May 15, 2017. He remained in the United States beyond that expiration date, and on July 2018, the Department of Homeland Security ("DHS") filed removal proceedings against G.D. and served him with a Notice to Appear ("NTA").  The NTA charged removability on the ground that G.D. had remained in the United States beyond the time permitted on his visa under 8 U.S.C. § 1227(a)(1)(B).

On July 23, 2018, G.D., through counsel, appeared before the immigration judge, admitted the factual allegations in the NTA, and conceded the charge of removability.  He then filed applications for asylum, for withholding of removal under the Immigration and Nationality Act ("INA"), and protection under the Convention Against Terrorism ("CAT").  G.D. argued that because he was a

---

[1] We vacate our earlier opinion and substitute the following opinion in its place.

2

bisexual male, he would more likely than not face persecution if required to return to Macedonia. He further argued he was entitled to protection because the Macedonian government fails to protect the LGBTQ community and fails to prosecute perpetrators of violent crimes committed against this community.

Along with his applications, G.D. also filed his sworn statement and other documentary support. In the sworn statement, as relevant to this appeal, he indicated that although same-sex relationships in Macedonia are not illegal, they remain extremely taboo and that the LGBTQ community is regularly abused, humiliated, and physically attacked. As an example, he recounted a time when he visited an LGBTQ bar in Macedonia in 2012 where "hooligans" attacked patrons, many of whom were injured, that resulted in little to no police investigation. As evidence of the high likelihood that he would face future persecution, G.D. explained that he hid his sexual orientation, but, after travelling to the United States, one of his former male partners exposed him. Following this outing, he claimed that his friends told him that he "would be in trouble" if he returned to Macedonia and that he received messages from former coworkers, neighbors, and friends threatening him, such as, "I'll make sure you regret who you are," and "I will break your nose." He cited these threats as why he was afraid to return to Macedonia and for his decision to remain unlawfully in the United States after his visa expired.

3

G.D. also filed a 2017 Department of State report, which found that one of the most significant human rights issues in Macedonia included violence against LGBTQ persons. According to the report and similar to G.D.'s statement, same-sex relationships are legal in Macedonia, and its "constitution and law prohibit discrimination based on sexual orientation and gender identity." But the LGBTQ community "remain[s] marginalized, and activists supporting [LGBTQ] rights reported incidents of societal prejudice, including hate speech, physical assaults and other violence, failure of police to arrest perpetrators of attacks, and a failure of the government to condemn or combat discrimination against the [LGBTQ] community." And the report further noted that there is a lack of will among the major political parties in Macedonia to address these issues.

Following a hearing, the immigration judge issued an oral decision denying G.D.'s applications. G.D. appealed the immigration judge's decision to the BIA only as to its denial of his applications for asylum and for withholding of removal under the INA. On March 15, 2019, the BIA remanded the application back to the immigration judge for further analysis, finding that the immigration judge had failed to "adequately weigh[] the evidence of record." On remand, following a second hearing, the immigration judge issued a written decision again denying G.D.'s applications for asylum and for withholding of removal. The immigration judge first held that G.D. was time-barred from seeking asylum as he had filed his application

4

after being present in the United States for over a year. The immigration judge then turned to G.D.'s application for withholding of removal and stated that he found G.D.'s statement and testimony credible, but that the reported harassment and verbal threats do not rise to the level of persecution. The immigration judge further held that although G.D. has a genuine, subjective fear of future persecution if he returned to Macedonia, he failed to meet his burden in demonstrating an objective, well-founded fear of future of persecution. As for the conditions in Macedonia, the immigration judge stated that although the people of Macedonia have historically been "intensely homophobic," activists and experts have indicated that "the mentality of people is slowly changing" and that the Macedonian government has been more openly supportive of the LGBTQ community. As such, the immigration judge stated that "the record [was] devoid of evidence that North Macedonian government officials would acquiescence to any future abuse" and concluded that G.D. was not eligible for withholding of removal under the INA or CAT.

G.D. again appealed the immigration judge's decision to the BIA, which dismissed his appeal, affirming the immigration judge's decision. The BIA echoed the immigration judge's finding that G.D. "failed to establish that any harm he may have suffered, even in the aggregate, was of such severity as to rise to the level of persecution." G.D. then filed the present appeal.

## II.    STANDARD OF REVIEW

5

We only review the decision of the BIA, unless, as here, the BIA expressly affirms or adopts the immigration judge's decision. *See Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308 (11th Cir. 2013).  We review factual determinations, including credibility determinations, under the substantial evidence test, which requires affirmance if the decision is supported by reasonable, substantial, and probative evidence on the record considered as a whole.  *Ruiz v. U.S. Att'y Gen.*, 440 F.3d 1247, 1254–55 (11th Cir. 2006).  We view the record in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision. *Id.* at 1255.  The mere fact that the record may support a different conclusion is not sufficient; rather, the record must compel a contrary conclusion to warrant reversal. *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1230 (11th Cir. 2007).

## III.  ANALYSIS

G.D. only raises one issue on appeal—that the BIA and immigration judge erred in finding that he did not have an objectively reasonable fear of future persecution based on his bisexuality if required to return to Macedonia.  He makes no argument that he is entitled to asylum[2] or to relief under the CAT, and "[w]hen an appellant fails to offer argument on an issue, that issue is abandoned." *Djonda v.*

---

[2] Moreover, we lack jurisdiction to review whether an application for asylum was timely filed.  *See Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1374 (11th Cir. 2006) ("'No court shall have jurisdiction to review any determination' that an application was untimely or failed to establish changed or extraordinary circumstances to excuse the delay." (quoting 8 U.S.C. § 1158(a)(3))).

*U.S. Att'y Gen.*, 514 F.3d 1168, 1173–74 (11th Cir. 2008) (quoting *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005)).  We therefore address only his eligibility for withholding of removal under the INA.

G.D. argues that the evidence on record, particularly his testimony and the reports concerning the current conditions in Macedonia, established a reasonably objective fear of future persecution and that the immigration judge failed to give "reasoned consideration" to all this evidence when he denied his application.  To qualify for withholding of removal, G.D. bears the burden to establish that his "life or freedom would be threatened in [his] country because of [his] race, religion, nationality, membership in a particular social group, or political opinion."  8 U.S.C. § 1231(b)(3)(A).  "This standard is more stringent than the 'well-founded fear of future persecution' required for asylum."  *Tan*, 446 F.3d at 1375 (citing *Mazariegos v. U.S. Att'y Gen.*, 241 F.3d 1320, 1324 n.2 (11th Cir. 2001)).

G.D. may satisfy this burden in either of two ways.  *Id.*  "First, [he] may establish past persecution in [his] country based on a protected ground.'"  *Id.*  Second, where past persecution is not shown, he can prove eligibility "if he can demonstrate a future threat to his life or freedom on a protected ground in his country."  *Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 437 (11th Cir. 2004).  To do so, he must prove that "it is more likely than not" that he would face discrimination

based on that protected ground. *Tan*, 446 F.3d at 1375. G.D. is not claiming past persecution, so only the second method is relevant to our analysis.

Here, substantial evidence supports the immigration judge's determination that G.D. failed to establish an "objectively reasonable" fear of future persecution. G.D. argues that his fear is objectively reasonable because he has received actual threats on social media from his peers and the Macedonian government is unlikely to protect his rights as a bisexual person. But "[p]ersecution is an extreme concept" and requires more than mere harassment or intimidation. *Silva v. U.S. Att'y Gen.*, 448 F.3d 1229, 1237 (11th Cir. 2006) (quoting *Sepulveda*, 401 F.3d at 1231). And although the country of Macedonia has a history or marginalizing and discriminating against the LGBTQ community, the government there has recently taken large strides to combat such marginalization. The record shows that Macedonia has prohibited, through both its constitution and laws, discrimination based on sexual orientation. It has provided verbal and financial support to the LGBTQ community, including giving a grant for annual pride events, which have occurred in recent years without incident. The record reflects, and the immigration judge concluded, that the LGBTQ community may still face harassment and discrimination in Macedonia, but such harassment is not condoned by the government and does not rise to the level of persecution. The immigration judge, and the BIA in affirming him, did not err in denying G.D.'s application for withholding of removal under the INA.

Finally, G.D. argues that the immigration judge failed to give "reasoned consideration" because he did not consider the specific threats G.D. received or the evidence related to the Macedonian government's inadequate protection of the LGBTQ community. But this argument lacks merit. The immigration judge reviewed and considered all the evidence on record, specifically referencing the personal threats and the current conditions in Macedonia. Its decision sufficiently evidenced "that it [had] heard and thought and not merely reacted" to the issues presented. *See Tan*, 446 F.3d at 1374. And, as discussed above, the immigration judge reasonably concluded that the threats of harassment and discrimination from his peers did not amount to the level of persecution required and that the steps taken by the Macedonian government to protect the LGBTQ community in its country strongly indicates that it would not sponsor or condone such persecution committed by private actors. *See Jeune v. U.S. Att'y Gen.*, 810 F.3d 792, 803 (11th Cir. 2016) ("Ultimately, the agency does not give reasoned consideration to a claim when it misstates the contents of the record, fails to adequately explain its rejection of logical conclusions, or provides justifications for its decision which are unreasonable and which do not respond to any arguments in the record."). We therefore deny G.D.'s petition for review.

## IV.    CONCLUSION

Because substantial evidence supports the immigration judge's reasoned determination that G.D. failed to demonstrate an objective fear of future persecution in Macedonia based on his bisexuality, we deny his petition.

**PETITION DENIED.**